UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZEEWE DAKAR MPALA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:12-CV-01580 (VLB) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, MARIA TONELLI, | : | |
| CHRISTOPHER KORENOWSKI, JOSEPH | : | |
| FLORES, HOUSATONIC SECURITY SERV. | : | |
| INC., | : | |
| Defendants. | : | March 6, 2014 |

**MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTIONS RE: SPOLIATION OF EVIDENCE [Dkts. 27, 30, 33]**

I.     Introduction

The Plaintiff, Zeewe Mpala ("Mpala"), proceeding *pro se*, has brought this action against Defendants City of New Haven ("City"), Maria Tonelli ("Tonelli"), Christopher Korenowsky[1] ("Korenowsky"), Joseph Flores ("Flores"), and Housatonic Security Serv. Inc., for alleged Constitutional violations stemming from Mpala's suspension from the New Haven Public Library ("Library").  Mpala has submitted two motions regarding the Defendants' alleged spoliation of evidence.  For the reasons that follow, his motions requesting sanctions are DENIED.

II.     Factual Background

---

[1] Korenowsky's name is misspelled in the caption of this case.

The following facts and allegations are taken from Plaintiff's complaint and the exhibits attached thereto. [Dkt. 1, Compl.]. On September 18, 2012, Mpala was accosted in the New Haven Public Library by two security officers, one of whom served Mpala with a copy of a letter dated September 17, 2012 suspending him from the Library. [Dkt. 1, Compl. p. 5/16]. Defendant Tonelli, according to Mpala, was present and "smiling in glee." [*Id.*]. This letter, which is attached to Mpala's complaint and signed by Korenowsky, states in relevant part as follows:

> It has been brought to my attention that you have acted in an abusive manner toward both members of the Library staff and your fellow customers on numerous occasions. Once again, on Thursday, September 6, 2012, you acted in a disruptive and aggressive manner. You interrupted a Community Program and created a situation in which the host of this program felt threatened and intimidated. Again on Saturday September 8, 2012, you acted in a belligerent and disruptive manner when our Security Guard tried to share our Baggage Policy with you. This type of behavior will not be tolerated in the Library. It is in direct violation of the City's Workplace Violence Policy.

[Dkt. 1, Letter p. 7/16]. Mpala was suspended from the use of the Library system for three weeks. [*Id.*]. Mpala appealed his suspension. [Dkt. 1, Compl. p. 5/16].

Mpala claims that he "is actually innocent of these charges," which are part of ongoing harassment since 2008 and that the program he was charged with interrupting "was already over by the time that Mpala had arrived." [*Id.* at pp. 2, 6/16]. He further claims that Korenowsky failed to review the surveillance film of the alleged incidents and failed to investigate his version before issuing the suspension, nor was he afforded a grievance hearing before or after his suspension. [*Id.* at pp. 1, 2/16]. Mpala claims that he is the victim of continuing harassment "because Mpala is a Black Male" and "White Males who are similarly

2

situated are not harassed like Mpala." [*Id*.]. He further alleges that "Flores is a Latino & Tonelli is Italian. He does not mis treat [sic] Latinos and Tonelli does not mis treat [sic] Whites who are similarly situated to Mpala;" rather, their mistreatment of him "is base [sic] on his race, color, woolly hair, sex, class, etc." [*Id*. at p. 2/16].

### III. Analysis

Mpala has submitted two separate "Motion(s) for the Plaintiff, Because the Defendants Intentional Spoliation of Vital Evidence" that appear to be the same motion, filed on July 3 and 25, 2013. [Dkts. 27, 30]. He has also filed an additional brief in support that purports to be in support of his spoliation motions but which does not allege any new arguments as to spoliation. [Dkt. 33]. He claims that when he was suspended from the Library for three weeks on September 18, 2012 based on incidents occurring on September 6 and 8, 2012, he "at once requested both Robert Smuts CAO & Rodrerick [sic] William, Assist. Corp., Counsel preserved the vital surveillance film." [Dkt. 30, p.1].

Mpala claims that Assistant Corporation Counsel Williams sent him the surveillance video from September 6, but the video contained "only about half of what happened" and did not contain surveillance of patrons leaving the event that Mpala was accused of interrupting. [*Id*.]. Mpala claims this portion of the video is significant because when Mpala arrived the program was already over, so he entered the program room, took some books off of the free book cart, and

3

left.  [*Id.* at 1-2].  He claims that a librarian had placed the free book cart in the program room for the event, and

> **The Surveillance Film, clearly shows Mpala entering & exiting the program room with someone in hot pursuit.  Mpala was trying to convince [the librarian] that these Books (that he was holding) were free! Their [sic] was a Sign 'Free Books' hanging on it!  Never the less, he still insisted that Mpala put the Books back on the Cart until further notice!  Mpala disobeyed his Order and left!**

[*Id.* at 2].

Mpala also alleges that Atty. Williams notified him that the surveillance videos from September 8 and 17 do not exist.  [*Id.* at 2].  He claims that the September 17 film "would have shown M. Tonelli, present, now laying in wait, motioning with her hands to go get him now!  Stop him now!" which Mpala claims proves she was part of a conspiracy to have him suspended from the Library.  [*Id.*].  He also claims that the September 8 incident "was pure fabrication by Jose Flores."  [*Id.*].

Mpala has attached to his motion an email from Assistant Corporation Counsel Williams dated May 23, 2013 noting that he had sent to Mpala a copy of the video surveillance from September 6, 2012, but that the Library "does not have a video recording of the incident that occurred on September 8, 2012."  [*Id.* at 6].

Mpala has also submitted an email chain between him and Williams from June 27, 2013 in which Mpala writes

4

> **I am presenting drafting the Memo to my response and it
> occurred to me that you never sent me the Video of the 9-17-12
> accost with Maria Tonelli present.  I requested it a # of times
> already.  See my initial Complaint, etc.  If you don't have it,
> then please say so!**

**[Dkt. 27, p. 6/11].  Williams' response explains that he was unaware of a request for the September 17, 2012 video and that such a request does not appear in Mpala's complaint.  [Dkt. 30, p. 7/9].  The Defendants admit in their opposition to the Plaintiff's motions that video from September 17, 2012 does not currently exist, if it ever existed at all.  [Dkt. 29, p.2].**

**In opposition to the Plaintiff's motions, Defendants City, Tonelli, and Korenowsky argue that Mpala did not request the September 17 video in either his complaint or a motion, or in email correspondence with Attorney Williams, that, even if he did, he was suspended from the Library on September 18 and thus a video of his activities from the prior day are irrelevant, and that video from either of these days is not relevant to his equal protection claim in this action.  An email sent by Mpala to Attorney Williams on March 19, 2013 and attached to the Defendants' motion states only "[r]equest for the Public Library Surveillance Film from Sept., 2012 events."  [Dkt. 29, p. 15/19].  A further email from Mpala sent on May 16, 2013 states "Mpala has been granted an Extension of Time by the Court.  The Clock is now ticking.  The defendant has only sent Mpala the Surveillance Film of one day.  Mpala is requesting the film of both days. . .  [Mpala] can't answer the Pleading Motion until he view Film of both days."  [Dkt. 29, p. 16/19].**

**The Defendants further claim that the September 8, 2012 incident was not recorded on a video camera and that the September 6, 2012 incident, which took**

5

place in a program room, was only captured on video taken by a camera in the hallway outside of the program room. Defendants have attached an email from Attorney Williams to Mpala dated July 2, 2013 in response to Mpala's request regarding the September 8 tape, stating that the events from that day were not recorded on a video camera "because there is not a camera that captured your discussion with the security guard." [Dkt. 29, p. 19/19]. Further, the Defendants claim that neither of these videos is relevant to the Plaintiff's equal protection claim, as neither will show how similarly situated Library patrons were treated.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quoting same). A district court may exercise its inherent power to control litigation by imposing sanctions for spoliation. *West*, 167 F.3d at 779. In crafting a proper sanction the court retains broad discretion. *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 13-0556-CV, 2014 WL 103994, at *2 (2d Cir. Jan. 13, 2014) (citation omitted). A spoliation sanction "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (quotation marks omitted). A terminating sanction is a "drastic remedy" that "should be imposed only in extreme circumstances, usually after consideration

of alternative, less drastic sanctions." *Gutman v. Klein*, 515 F. App'x 8, 9 (2d Cir. 2013) (quoting *West*, 167 F.3d at 779). The applicable sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d at 779; *Metro Found. Contractors*, 2014 WL 103994, at *2 (same).

A party seeking sanctions based on spoliation of evidence must establish three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Rajaravivarma v. Bd. of Trustees for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 163 (D. Conn. 2012) (VLB) (same).

### a. Obligation to Preserve

The obligation to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). *See also Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998) ("This obligation … arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but

7

also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."). Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence. *Fujitsu*, 247 F.3d at 436; *Kronisch*, 150 F.3d at 127.

      The Defendants have indicated that they provided Mpala with a copy of the video surveillance from the September 6, 2012 event, which came from a video camera located in the hallway outside the program room and therefore did not capture events inside the room. Although Mpala claims that this video is incomplete, he does not indicate that a complete video of this incident even exists. He appears to claim that whatever took place inside the program room was not captured on video surveillance, which comports with the Defendants' contention that no video camera captured the inside of the room. Mpala, though, admits that "The Surveillance Film, clearly shows Mpala entering & exiting the program room with someone in hot pursuit." Because no camera captured the events inside the program room, and because Mpala admits that the video recording provided to him captures him entering and exiting the room and is apparently complete, the Defendants have met their obligation. They have provided the evidence in their possession pertaining to the September 6 incident to Mr. Mpala. They have no obligation to provide Mpala with evidence that does not exist. Mpala's spoliation motions are thus DENIED as to the September 6, 2012 incident.

**Nor do the Defendants have an obligation to provide non-existent video evidence as to the September 8, 2012 incident. The Defendants have represented that this incident was not recorded on a video camera "because there is not a camera that captured [Mpala's] discussion with the security guard," information that was conveyed to Mpala by Attorney Williams in an email dated July 2, 2013. [Dkt. 29, p. 19/19]. Consequently, as the incident to which Mpala refers was not captured on surveillance video, the Defendants are under no obligation to preserve this non-existent evidence. Mpala's spoliation motions are DENIED as to the September 8, 2012 incident, as there is no evidence that such a video was destroyed or even existed.**

**The Court finds, however, that the Defendants had an arguable obligation to preserve the video surveillance, if any existed, from the day Mpala was suspended from the Library for three weeks: September 18, 2012. Mpala claims that he requested this video[2] in his complaint, and has submitted email correspondence from June 27, 2013 in which he seeks this video from Attorney Williams. In an exhibit to his complaint, in a section entitled "Statement of Facts," Mpala states that on September 18, 2012 he was accosted by two security guards at the Library. [Dkt. 1, Compl. p.5/16]. He continues that "Maria Tonelli, supra, was also present, she was smiling in glee (See the Surveillance film, Tonelli the initial defendant, supra, the case is still pending)." [*Id.*]. Mpala contends that his reference to the September 18, 2012 video in an exhibit to the**

---

[2] **Which he refers to, erroneously, as video from September 17, 2012 in his motions and correspondence with the Defendants' counsel.**

9

complaint should have put the Defendants on notice that they should not dispose of any surveillance video involving Plaintiff from this day.

While the Court is not entirely persuaded that this reference in an exhibit to his complaint constitutes a request to preserve the September 18 video, and while the Court is equally unpersuaded by Mpala's email correspondence as to such video with Attorney Williams, this is not the first case Mpala has brought against the New Haven Public Library system, nor is this Mpala's first suspension from or dispute with the Library. Korenowsky's September 17, 2012 letter suspending Mpala noted that he had behaved in "an abusive manner toward both members of the Library staff and your fellow customers on numerous occasions." [Dkt. 1, Letter p. 7/16]. Moreover, Mpala instituted a separate lawsuit against the City, Maria Tonelli, and several New Haven police officers on November 7, 2011. *See* Dkt. No. 3:11-cv-1724(VLB). His original complaint in that action alleged, among other things, that Tonelli had called the New Haven police on November 18, 2008, claiming that Mpala had caused a disturbance in the Library. [3:11-cv-1724, dkt. no. 1, p.1]. Mpala reiterated these claims against Tonelli in his Amended Complaint in that action, filed April 5, 2012, his Second Amended Complaint, filed June 21, 2012, and his Third Amended Complaint, filed August 9, 2012, all before the instant action was initiated. [3:11-cv-1724, dkt. nos. 14, 26, 32]. As such, it was not inconceivable that Mpala would file a second lawsuit as a result of his suspension on September 18, 2012. In an abundance of prudence, the Library could have preserved the video surveillance tape of Mpala's notification of suspension, if any existed.

10

b.  Culpable State of Mind

Because this Court has found that the Library had an arguable obligation to preserve the September 18, 2012 video, Mr. Mpala must demonstrate that this video was destroyed "with a culpable state of mind" to proceed with his claim for sanctions.  This prong may be satisfied by "a showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  Ordinary negligence suffices to meet this prong.  *Id.* at 108; *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003).  "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."  *Zubulake*, 220 F.R.D. at 220; *Johnson v. Waterford Hotel Grp., Inc.*, 3:09-CV-800 VLB, 2011 WL 87288 (D. Conn. Jan. 11, 2011) (VLB) (citing same).

The Defendants have represented that a video from September 18, 2012 does not exist and, if it ever existed, it has since been destroyed pursuant to municipal policy which deems that surveillance video is destroyed after a certain amount of time.  Because the Library was arguably obligated to preserve the September 18 video and it did not do so (if a video even existed), it possessed the requisite ordinarily negligent state of mind for the Plaintiff to proceed on his spoliation argument.

c.  Relevance to Mpala's Claim

Lastly, to prevail on a motion for sanctions pursuant to spoliation of evidence, Mpala must demonstrate that the destroyed evidence was "relevant" to

11

his claim such that a reasonable trier of fact could find that it would support that claim.  "Relevant" in the spoliation context "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking [the sanction] must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'"  *Residential Funding Corp.*, 306 F.3d at 108-09 (citing *Kronisch*, 150 F.3d at 127).  Courts though "must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction."  *Id* at 109 (internal quotation marks and citations omitted).

Here, Mpala claims that he was treated differently from other similarly situated Library patrons when he was suspended from the Library for three weeks.  He claims that the September 17 film "would have shown M. Tonelli, present, now laying in wait, motioning with her hands to go get him now!  Stop him now!" which Mpala claims proves she was part of a conspiracy to have him suspended from the Library.  However, the relevance of any September 18, 2012 video surveillance that may have existed is tenuous at best.  First, Mpala was suspended for incidents that occurred on September 6 and 8, 2012.  On September 18 he was handed his suspension letter, thus suspending him.  His suspension was not based on any incident that occurred on September 18, 2012, nor do the Defendants deny suspending Mpala or expelling him from the Library

on September 18.  Any video surveillance record that existed from that day, then, would be cumulative of the Defendants' admission that they did in fact suspend Mpala.  Nor does Mr. Mpala claim that he was injured during this expulsion, that Tonelli or anyone else present that day made comments or gestures that would allow a court or jury to reasonably infer that he was suspended due to his race, or that the video demonstrates that similarly situated Library patrons were treated differently than Mpala.  Further, although Mpala claims that Tonelli was involved in a conspiracy to deprive him of his rights as could be demonstrated by this video, Tonelli has not denied her role in suspending Mr. Mpala from using the Library for three weeks.

      Mr. Mpala has not demonstrated the relevance of any video from September 18, 2012.  Further, "where a party acted with mere ordinary negligence in destroying evidence, the opposing party seeking an adverse inference must establish relevance through other evidence, such as deposition testimony regarding the nature of the missing documents."  *Johnson v. Waterford Hotel Grp., Inc.*, 3:09-CV-800 VLB, 2011 WL 87288 (D. Conn. Jan. 11, 2011) (citing *Residential Funding Corp.*, 306 F.3d at 109).  Mr. Mpala has submitted no additional evidence of relevance (and indeed has not established that a video from September 18, 2012 even existed), and thus his motions for sanctions for spoliation of evidence are DENIED.

      d.  **<u>Appropriate Sanction</u>**

13

**Even if Mpala has satisfied the three prongs necessary to support sanctions for spoliation of evidence, the Court finds that no sanctions are appropriate in this case given the negligible relevance of a video recording from September 18, 2012 to the Plaintiff's claims.[3]**

**Courts retain discretion in imposing sanctions for spoliation of evidence. As noted, a spoliation sanction "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."** *West v. Goodyear Tire & Rubber Co.*, **167 F.3d 776, 779 (2d Cir. 1999) (quotation marks omitted).**

**A terminating sanction, which would grant judgment to Mpala, is far too drastic a remedy for the negligible spoliation in this case, given the scant value of video surveillance from September 18, 2012.  Mpala has not demonstrated that this case is illustrative of one in which extreme circumstances dictate that a terminating sanction is proper.  Nor has Mpala demonstrated that a tape of his expulsion on September 18, 2012 is sufficiently relevant to his claims in this action such that an adverse inference instruction to a jury would be proper. Lastly, Mr. Mpala is proceeding in this action in forma pauperis.  He has not demonstrated that he has incurred any costs of preparing or filing these motions and, even if he has, the negligible relevance of a September 18, 2012 video recording does not merit an award of costs or fees.**

---

[3] **Mpala has not specified the sanction he seeks.**

Mpala's request for sanctions based on spoliation of evidence is DENIED.

IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motions for sanctions for the Defendants' spoliation of evidence are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 6, 2014