UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZEEWE DAKAR MPALA, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:12-CV-01580 (VLB) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, MARIA TONELLI, | : | |
| CHRISTOPHER KORENOWSKI, JOSEPH | : | |
| FLORES, HOUSATONIC SECURITY SERV. | : | |
| INC., | : | |
|     Defendants. | : | March 6, 2014 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [Dkt. 17]**

I.  Introduction

The Plaintiff, Zeewe Mpala ("Mpala"), proceeding *pro se*, brings this action against Defendants City of New Haven ("City"), Maria Tonelli ("Tonelli") in her individual capacity, Christopher Korenowsky[1] ("Korenowsky"), in his individual capacity, Joseph Flores ("Flores"), in his individual capacity, and Housatonic Security Serv. Inc., for alleged Constitutional violations stemming from Mpala's suspension from the New Haven Public Library ("Library"). Defendants City, Tonelli, and Korenowsky[2] have submitted a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that Mpala has failed to articulate a cognizable Equal Protection claim pursuant to the

---

[1] Korenowsky's name is misspelled in the caption of this case.
[2] Defendants Flores and Housatonic Security Serv. Inc. have not answered or otherwise responded to the Plaintiff's complaint.

1

Fourteenth Amendment.  For the reasons that follow, Defendants' Motion for Judgment on the Pleadings is GRANTED.

II.      Factual Background

As an initial matter, the Court notes that the Cause of Action section of Mpala's complaint begins by stating that "[m]any of the facts and the plaintiff's arguments were already presented to the following: the Court and all parties … in the plaintiff [sic] Motion dated Sept. 21st 2012.  Therefore it is no need to repeat it here."  [Dkt. 1, Compl. p. 1/16].  Plaintiff is mistaken.  For future reference, Plaintiff is hereby advised that all facts and law upon which a party relies in support of a motion or request must be set forth in the motion or request in which the Court order is requested.  Contrary to Plaintiff's contention, Fed. R. Civ. P. 7(b)(1)(B) provides that  a "motion must: … state with particularity the grounds for seeking the order, . . ."  The Local Rules of this District further provide that: "[a]ny motion involving disputed issues of law shall be accompanied by a written memorandum of law and shall indicate in the lower margin of the motion whether oral argument is requested.  Failure to submit a memorandum may be deemed sufficient cause to deny the motion.  Unless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion, and shall indicate in the lower margin of the first page of such memorandum whether oral argument is requested.  Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion.  Nothing in this Rule shall require the Judge ruling on the motion to

review portions of the record in response to a motion, where the moving papers do not make specific reference to such portions of the record. D. Conn. L. Civ. R. 7(a)(1). In the interest of judicial efficiency and in deference to the Plaintiff's *pro se* status, the Court will consider this matter notwithstanding Plaintiff's failure to comply with the Rules. The Court is disinclined to grant future concessions as the Plaintiff has been advised of his duty and the consequences of failing to discharge it.

This action was filed by Mr. Mpala on November 8, 2012, and thus no motion from September 2012 appears on the docket. It appears that Mpala is referencing pages 5 and 6 of his filed complaint, which are dated September 21, 2012 (but filed November 8, 2012 as part of the complaint), styled as a motion, contain sections entitled Jurisdiction, Statement of Facts, and Argument, and are marked "Exhibit." The Court will consider this exhibit and the other documents attached to Mpala's complaint.

The following facts and allegations are taken from Plaintiff's complaint and exhibits attached thereto. [Dkt. 1, Compl.]. On September 18, 2012, Mpala was accosted in the New Haven Public Library by two security officers, one of whom served Mpala with a copy of a letter dated September 17, 2012 suspending him from the Library. [Dkt. 1, Compl. p. 5/16]. Defendant Tonelli, according to Mpala, was present and "smiling in glee." [*Id.*]. This letter, which is attached to Mpala's complaint and signed by Korenowsky, states in relevant part as follows:

> It has been brought to my attention that you have acted in an abusive manner toward both members of the Library staff and

3

>**your fellow customers on numerous occasions.  Once again, on Thursday, September 6, 2012, you acted in a disruptive and aggressive manner.  You interrupted a Community Program and created a situation in which the host of this program felt threatened and intimidated.  Again on Saturday September 8, 2012, you acted in a belligerent and disruptive manner when our Security Guard tried to share our Baggage Policy with you.  This type of behavior will not be tolerated in the Library.  It is in direct violation of the City's Workplace Violence Policy.**

[Dkt. 1, Letter p. 7/16].  Mpala was suspended from the use of the Library system for three weeks.  [*Id.*].  Mpala appealed his suspension.  [Dkt. 1, Compl. p. 5/16].

Mpala claims that he "is actually innocent of these charges," which are part of ongoing harassment since 2008 and that the program he was charged with interrupting on September 6 "was already over by the time that Mpala had arrived."  [*Id.* at pp. 2, 6/16]. He does not allege that he was not disruptive, intimidating or belligerent during these incidents.  Instead, he asserts an equal protection claim asserting that he was subjected to disparate treatment on the basis of his race and having been continually harassed "because Mpala is a Black Male" and "White Males who are similarly situated are not harassed like Mpala."  [*Id.*].  He further alleges that "Flores is a Latino & Tonelli is Italian.  He does not mis treat [sic] Latinos and Tonelli does not mis treat [sic] Whites who are similarly situated to Mpala;" rather, their mistreatment of him "is base [sic] on his race, color, woolly hair, sex, class, etc."  [*Id.* at p. 2/16].   He also claims a denial of due process, asserting that Korenowsky failed to review the surveillance film of the alleged incidents and failed to investigate his version before issuing the suspension, and asserting that he was not afforded a grievance hearing before or after his suspension.  [*Id.* at pp. 1, 2/16].

4

### III.  Standard of Review

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 13-1604-CV, 2014 WL 321943 (2d Cir. Jan. 30, 2014). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556

5

U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

Finally, the Court notes that the Plaintiff brings this action *pro se*.  It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest."  *Jabbar v. Fischer*, 683 F.3d 54, 56 (2d Cir. 2012) (quotation marks, alterations, and citation omitted); *see also Toliver v. City of New York*, 530 F. App'x 90, 91 (2d Cir. 2013); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

6

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and quotation omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and citation omitted).

### IV. Discussion

#### a. Equal Protection

Defendants City, Tonelli, and Korenowsky first contend that Plaintiff's only asserted claim is one for equal protection due to selective enforcement under 42 U.S.C. § 1983. Plaintiff has claimed that the Defendants' mistreatment of him "is base [sic] on his race, color, woolly hair, sex, class, etc." and that Defendants Flores and Tonelli do not mistreat Latino or white Library patrons who are similarly situated to the Plaintiff. The Defendants urge this Court to dismiss Mpala's equal protection claim because he has failed to allege any particularized facts supporting his contention that he was treated differently than other similarly situated Library patrons. The Court agrees.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Plaintiffs claiming selective enforcement

7

must show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (internal quotation marks and citation omitted); *Kajoshaj v. New York City Dep't of Educ.*, 13-650-CV, 2013 WL 5614113, at *3 (2d Cir. Oct. 15, 2013) (same). "Use of an impermissible consideration (such as race) must have been intentional, not merely negligent. Deliberate indifference suffices so long as the defendant's indifference was such that the defendant intended the discrimination to occur." *Brisbane*, 443 F. App'x at 594 (internal quotation marks and citations omitted).

Mpala has failed to plausibly state, by alleging particularized facts, that similarly situated Library patrons were treated differently by the New Haven Public Library or the Defendants in this action as required to establish a selective enforcement claim. Mpala has only conclusorily alleged that Tonelli does not mistreat white patrons and Flores does not mistreat Latino patrons, but has not alleged any facts indicating that similarly situated non-black patrons were treated differently. Nor has Mpala alleged any particularized facts tending to show that Korenowsky treated any group differently than he did Mpala. Mpala has conclusorily alleged that the Defendants treated other groups differently, but has not alleged any instances in which any such similarly situated persons were treated differently than African American patrons under the same or substantially similar circumstances. *See Sebold v. City of Middletown*, Civ. No. 3:05–CV–

8

1205(AHN), 2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007) ("In order to state a selective enforcement claim, a plaintiff must present evidence comparing herself to individuals that are 'similarly situated in all material respects.' ") (citation omitted). Mpala's conclusory allegations contain insufficient factual content for the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To allege an equal protection claim under the facts of this case, Mr. Mpala cannot simply assert legal conclusions like "I was treated differently!" without any factual support. Rather, Mr. Mpala needs to allege specific facts that would allow the Court to draw the conclusion that he was treated differently than non-Black Library patrons who acted in the same or a similar manner as Mpala acted during the incidents leading to his suspension. For instance, instead of merely claiming "I was treated differently than Latinos," Mr. Mpala needs to allege specific facts about incidents in which Latinos (or other non-Black Library patrons) behaved in a way similar to or the same as the ways in which Mr. Mpala behaved on September 6 and 8, 2012. In doing so, Mr. Mpala must describe the manner in which he and these other Library patrons behaved during these incidents. He must then explain the consequences, if any, to these other Library patrons, and how their treatment differed from his own. Without such specific facts, Mr. Mpala's claims are too vague and conclusory to sustain an equal protection claim.

In response to the Defendants' motion, Mpala alleges only that Defendant Tonelli "was in the habit of calling the N.H.P.D., On Black patrons on a regular

9

basis before the initial incident that occurred on the 18-11-08, at the said Library," but that Tonelli then "mysteriously stop making 911 calls to the police" which he claims establishes "an inference that she had received a warning from her superiors" and "has not made another 911 Call in almost 5 years." [Dkt. 28-1, P's Opposition, p. 2/9]. Mpala has also attached what appears to be a report of 911 calls made by Tonelli but which does not specify the actors about whom she apparently called, and a letter from a lawyer in a separate matter whose relevance the Court cannot determine. This additional information neither appears in Mpala's Complaint nor is relevant to this case, as far as the Court can determine. Even if it were proper to consider on a 12(c) motion – and it is not – the log of Tonelli's 911 calls does not establish that she had a habit of calling emergency services on minority patrons, and the fact that she has not called 911 in the past five years, as Mpala alleges, suggests that if she had improper motives for doing so five years ago, she no longer does. This information is irrelevant.

The Defendants' motion for judgment on the pleadings as to Mpala's Equal Protection claim is GRANTED because Mpala has failed to plead facts in which other individuals who were not Black males engaged in the type of behavior in which he engaged and were not treated in the punitive manner in which he was treated. This claim is DISMISSED.

b. <u>Municipal Liability</u>

Mpala has also brought this action against the City of New Haven. To prevail on a claim against a municipality under 42 U.S.C. § 1983 for constitutional

10

violations of its public officials or employees, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978) 690–91).  The fifth element, requiring an official policy, "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'"  *Id.* (citing *Monell*, 436 U.S. at 691).  A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority."  *Zherka v. DiFiore*, 412 F. App'x 345, 348 (2d Cir. 2011) (citing *Monell*, 436 U.S. at 695).

      Mpala fails to allege even a formulaic recitation of the elements of a *Monell* claim for municipal liability, nevermind the required factual enhancement, to render his claim against the City plausible.  Mpala fails to allege any facts regarding a municipal custom or practice in his complaint.  In his opposition, as noted, Mpala has alleged that Tonelli's practice was to call 911 on minority patrons, but as noted this allegation is conclusory and improper on this motion and, more importantly, fails to support Mpala's claims.  Mpala thus has failed to plead any factual content to allow the Court to draw the reasonable inference that the City is liable under a municipal liability theory.  The Court therefore GRANTS Defendants' motion for judgment on the pleadings as to this claim and DISMISSES Mpala's claim against the City.

## V. Conclusion

For the foregoing reasons, Defendants' [Dkt. 17] Motion for Judgment on the Pleadings is GRANTED, Mpala's opposition (filed as a motion) is DENIED, and Mpala's equal protection and municipal liability claims are DISMISSED.

Mpala has also articulated a claim for violation of his due process rights in that he was not afforded a hearing prior to or after his suspension and the Defendants failed to review evidence prior to his suspension. The Defendants have not addressed this claim and therefore it is the only active claim remaining in this case.

The Plaintiff may seek leave of the Court to amend his complaint within 21 days of the date of this Order, or by March 28, 2104. If he chooses to do so, Mr. Mpala's amended complaint must show that he was treated differently than non-Black Library Patrons. Specifically, his amended complaint must (1) describe the manner in which he and identified non-Black male Library patrons behaved similarly; (2) identify the approximate time and place of the conduct alleged; (3) describe how he was treated and how the non-Black males patrons were treated; and (4) describe how their treatment differed from his own. Without such specific facts, an amended complaint would suffer from the same deficiencies as the present complaint, it would be futile to grant further leave to amend, and the Court would deny the motion to amend.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 6, 2014**